# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RAVON L. JETER SR.,
      Plaintiff,

     vs.

BRYAN LAWLESS,
      Defendant.

Case No. 1:19-cv-623
Cole, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

Plaintiff Ravon L. Jeter Sr., a prisoner at the Southern Ohio Correctional Facility (SOCF), filed this pro se civil rights complaint under 42 U.S.C. § 1983 alleging that defendant Bryan Lawless, an SOCF corrections officer (CO) conducted an unlawful search of his prison cell and used excessive force against him in violation of his constitutional rights. This matter is before the Court on defendant's motion for summary judgment (Doc. 41), plaintiff's response (Doc. 45), and defendant's reply (Doc. 47).

## I.      Factual Background

In support of his motion for summary judgment, defendant has submitted his own declaration (Doc. 38-1) in addition to those of Nurse Savannah Vanhoose (Doc. 39-1)[1] and Deputy Chief Inspector Roger Wilson (Doc. 38-4). Defendant also submitted the Use of Force Report (UOF Report) (Doc. 38-3) and video recordings (*see* Doc. 40) that capture the alleged use of force incident that occurred January 15, 2019.[2] Plaintiff has submitted no sworn testimony, statement under 28 U.S.C § 1746 (requiring statement to be made under penalty of perjury), or other evidence to oppose defendant's motion for summary judgment. Plaintiff relies on the

---

[1] Nurse Vanhoose is a former SOCF employee. (Vanhoose Decl., Doc. 39-1, PAGEID 228 at ¶ 9).
[2] Defendant also submitted Deputy Warden Cynthia Davis's declaration (Doc. 38-2) to demonstrate that the latter two submissions constitute records of a regularly conducted activity. *See* Fed. R. Evid. 803(6). The statements of the parties and SOCF employees contained therein, however, are inadmissible hearsay. *See* Fed. R. Evid. 801(c).

unsworn allegations of his complaint (Doc. 5) and his unsworn statements in response (Doc. 45).

Plaintiff has submitted what he captions an "affidavit" from a fellow inmate, but the document is

neither sworn nor compliant with 28 U.S.C § 1746.  (Doc. 46).  Otherwise, plaintiff relies on the

video recordings submitted by defendant.

    According to the evidence submitted by defendant, the two incidents giving rise to this

lawsuit occurred at SOCF on January 15, 2019: a search of plaintiff's cell and a use of force

incident with oleoresin capsicum (OC) spray (pepper spray).  (Lawless Decl., Doc. 38-1,

PAGEID 177-78 at ¶ 4-5, 11).[3]  On that date, and as required by SOCF, defendant conducted a

random search of plaintiff's cell.  (*Id.*, PAGEID 178 at ¶ 11).  During the search, defendant "did

not destroy any of [plaintiff's] personal property, or ruin his sheets or clothing."  (*Id.*).  Later that

same day, defendant, accompanied by CO Payton Jenkins and Nurse Vanhoose, entered

plaintiff's cell block to perform "med pass," during which a nurse "provides inmates with their

medications as prescribed by the institution's physicians."  (*Id.*, PAGEID 177 at ¶ 4).  Upon

entering the cell block, defendant heard plaintiff "yelling . . . in a threatening manner."  (*Id.* at ¶

5).  As they approached plaintiff's cell, plaintiff was "standing at his cell-front hacking and

making threatening gestures."  (*Id.*).  When they reached his cell, he spit in defendant's direction.

(*Id.*).  Defendant responded with a burst of OC spray "to prevent any further aggressive or

assaultive behavior. . . ."  (*Id.*, PAGEID 178 at ¶ 5).  Defendant contacted his supervisor and

informed him of the situation.  (*Id.* at ¶ 9).  Plaintiff was eventually escorted from his cell.

(Video 029-19A at 7:08:51.694).  The UOF Report includes a Medical Exam Report (MER).

(Doc. 38-8 at PAGEID 210-212).  The MER indicates that plaintiff was evaluated by a nurse

following the use of force incident.  (*Id.* at PAGEID 210).  The nurse made objective physical

---

[3] Defendant references the year 2020 in paragraph 11 of his declaration, which appears to be a scrivener's error.

findings that plaintiff had no acute distress and his breathing was easy and unlabored but also that the right side of his face and eye had been affected by the OC spray.  (*Id.*).  The MER reflects that plaintiff refused decontamination in the infirmary (*Id.*).  He was therefore advised that continued irritation could occur for up to an hour and he should blow his nose and rinse his mouth as needed.  (*Id.*).  The nurse also recommended that plaintiff change his clothes, and another nurse gave him an inhaler.  (*Id.*).

Plaintiff filed an informal complaint resolution (ICR) on January 17, 2019.  (Wilson Decl., Doc. 38-4, PAGEID 217 at ¶ 11; PAGEID 219 (ICR)).  Plaintiff's ICR alleged that defendant violated administrative rules and policies, used unnecessary force, and filed false documents against plaintiff in connection with the January 15, 2019 use of force incident.  (*Id.*).[4] SOCF responded to the January 17, 2019 ICR and informed plaintiff that the incident would be investigated by the Use of Force Committee.  (*Id.* at ¶ 12).  On February 23, 2019, plaintiff filed a notification of grievance (NOG) regarding defendant's use of force with the OC spray and defendant's search of plaintiff's cell earlier that same day.  (*Id.*, PAGEID 217 at ¶ 13; PAGEID 220 (NOG)).  The SOCF Institutional Inspector denied both claims alleged in plaintiff's NOG. (*Id.*, PAGEID 217 at ¶ 14; PAGEID 221 (Disposition of Grievance)).  On March 10, 2019, plaintiff appealed to the Chief Inspector alleging that the Institutional Inspector failed to properly investigate the unnecessary force claim.  (*Id.*, PAGEID 217 at ¶ 15; PAGEID 222 (Appeal to the

---

[4] Plaintiff attached a separate ICR to his complaint, which is dated by plaintiff on January 20, 2019 and which purports to cover defendant's unprofessional behavior related to the search of his cell.  (Doc. 5 at PAGEID 47-48). Unlike the ICR attached to Inspector Wilson's declaration, however, it does not contain any indicia of reliability such as a date stamps or a signature by an SOCF official.  (*See* Doc. 38-4, PAGEID 217 at ¶ 16).  The Court does not consider this document for purposes of summary judgment.  *See* Fed. R. Civ. P. 56(c)(1)(B) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: . . . showing that . . . that an adverse party cannot produce admissible evidence to support the fact.").

Chief Inspector)).  Defendant argues that this appeal did not include plaintiff's claim regarding defendant's "unprofessional behavior as to the search of his cell."  (*Id.*, PAGEID 217 at ¶ 15).[5]

Plaintiff's unsworn account differs significantly.  Plaintiff alleges that earlier in the day on January 15, 2019, he was playing chess with another inmate when defendant came up to him and said, "step up asshole shake down. . . ."  (Pl.'s Compl., Doc. 5 at PAGEID 44).  Plaintiff asked for a lieutenant superior but defendant handcuffed him and took him to the shower where he stood for three to seven minutes as defendant was in his cell throwing and taking his property, smearing toothpaste on his sheets and blankets, and spraying his things with OC spray.  (*Id.* at PAGEID 44-45).  Later, as plaintiff was cleaning his cell during med pass, plaintiff was going to ask for his inhaler when defendant walked in front of his cell and, without stopping, sprayed him in the face with OC spray.  (*Id.* at PAGEID 45-46).  Plaintiff alleges that Nurse Vanhoose responded "I can't believe you just fucking did that" and CO Jenkins stood behind her smiling. (*Id.* at PAGEID 46).  Plaintiff then alleges he was placed in a suicide glass cell with no air circulation and denied medical treatment.  (*Id.* at PAGEID 46).

As it relates to the use of force incident in particular, defendant argues that his version of events is "clearly show[n]" by the video recording, with defendant, Nurse Vanhoose, and CO Jenkins "step[ping] wide" from plaintiff's cell "in response to [plaintiff's] spitting towards them."  (Def.'s Mot. Summ. J., Doc. 41, at PAGEID 239).  In the Court's view, however, the video recording is not so definitive.[6]  It reflects defendant, Nurse Vanhoose, and CO Jenkins walking through the corridor conducting med pass.  All three approached plaintiff's cell,

---

[5] In the appeal, plaintiff references defendant's "history of . . . unprofessional behavior" and asks "that [defendant] be handle[d] for his unprofessional behavior as a [CO]" but does not specifically reference his cell search. (Doc. 38-4 at PAGEID 222).

[6] The video evidence provided to the Court does not have sound or show the interiors of inmates' cells and therefore does not reflect plaintiff's actions prior to the use of OC spray; it also does not extend to earlier in the day on January 15, 2019, when plaintiff's cell search occurred.

defendant raised his arm and used his OC spray, and *only after that* did the three step away from plaintiff's cell. (Video 029-19A at 6:53:54.827 to 6:53:56.848). Nurse Vanhoose's declaration states, generally, that she was often spit on or the target of thrown objects (including feces) during med pass. (*Id.*, PAGEID 227 at ¶ 5). She also denied using profanity against defendant after his use of OC spray, remarking (again, only generally,) that she respected COs for keeping her safe during med pass. (*Id.*, PAGEID 227-28 at ¶¶ 6-8).

## II.      Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper unless the nonmoving party "establish[es] genuinely disputed material facts by 'citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute.'" *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield v. Tenn.*, 295 F.3d 611, 615 (6th Cir. 2002); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[f]acts that are not blatantly contradicted by [the evidence] remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House, Tenn*., 634 F.3d 865, 870 (6th Cir. 2011). "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v. Montgomery Cnty. Jail Med. Staff Pers*., 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

A fact is "material" if its resolution will affect the outcome of the lawsuit. *Beans v. City of Massillon*, No. 5:15-cv-1475, 2016 WL 7492503, at *5 (N.D. Ohio Dec. 30, 2016), *aff'd,* No. 17-3088, 2017 WL 3726755 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 248). The party who seeks summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 322. To make its determination, the court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his

6

pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp. 2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc*., 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

## III.     Defendant's Motion for Summary Judgment

Defendant moves for summary judgment for four primary reasons: (1) plaintiff has failed to exhaust his administrative remedies regarding the search of his cell as required under the Prisoner Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, and even if plaintiff did exhaust his administrative remedies, the search was lawful; (2) there is no genuine issue of material fact regarding plaintiff's Eighth Amendment claims of excessive force or deliberate indifference; (3) because plaintiff's Eighth Amendment claims fail, defendant is entitled to qualified immunity on those claims; and (4) plaintiff's claim for monetary damages is barred by the Eleventh Amendment.

As an initial matter, plaintiff's claims against defendant in his official capacity must be dismissed to the extent that plaintiff seeks monetary damages. Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 144 (1993); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). The State of Ohio has neither constitutionally nor statutorily waived its Eleventh

7

Amendment immunity in the federal courts.  *See Johns v. Sup. Ct. of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460-62 (6th Cir. 1982).  The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state.  *See Edelman*, 415 U.S. at 663; *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945).  A suit against defendant in this official capacity would, in reality, be a way of pleading the action against the entity of which defendant is an agent.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Thus, actions against state officials in their official capacities are included in this bar. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232 (1974).  *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)).  Therefore, defendant is immune from suit in his official capacity to the extent that plaintiff seeks monetary damages.

### A.  Cell Search

The legal basis for plaintiff's claim related to the search of cell occurring earlier in the day on January 15, 2019 is not entirely clear from his complaint.  As best the Court can decipher, plaintiff alleges that the search violated the Fourth Amendment's protection against unreasonable searches.  An incarcerated person, however, has no reasonable expectation of privacy in his prison cell.  *See United States v. Carson*, 796 F. App'x 238, 249 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 2754 (2020), *reh'g denied*, 141 S. Ct. 204 (2020) (quoting *Hudson v. Palmer*, 468 U.S. 517, 530 (1984) ("[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells.") and *United States v. Smith*, 526 F.3d 306, 309 (6th Cir. 2008) ("[I]nmates . . . have no legitimate expectation

of privacy from searches of their prison cells.")).  While prisoners may retain some Fourth

Amendment rights as it pertains to bodily integrity, *see, e.g., Bell v. Wolfish*, 441 U.S. 520, 558

(1979) (discussing visual body cavity inspections); *Watsy v. Ames*, 842 F.2d 334, *2 (6th Cir.

1988) (unpublished table decision) (discussing strip searches), plaintiff makes no allegations

related to his person in the context of his cell search.  To the contrary, plaintiff alleges that he

was escorted from his cell while the search took place.  (*See* Doc. 5 at PAGIED 44-45).

Plaintiff's complaint fails to state a claim for relief under the Fourth Amendment and, as such, it

is unnecessary to engage in an analysis of whether plaintiff properly exhausted any Fourth

Amendment claim related to the search of his cell.  Defendant is entitled to judgment as a matter

of law on this claim.

### B.  Excessive Force: OC Spray

#### 1.  Legal Standard

Plaintiff's Eighth Amendment claim is brought under 42 U.S.C. § 1983, which prohibits

any person "under color of any statute, ordinance, regulation, custom, or usage, of any State"

from depriving a United States citizen "of any rights, privileges or immunities secured by the

constitution and laws."  To prevail on a § 1983 claim, plaintiff must demonstrate "(1) the

deprivation of a right secured by the Constitution or laws of the United States (2) caused by a

person acting under the color of state law."  *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549

(6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

A convicted prisoner's right to be free from the use of excessive force by prison officials

is governed by the Eighth Amendment.  *Whitley v. Albers*, 475 U.S. 312, 327 (1986).  The "core

judicial inquiry" whenever a prison official stands accused of using excessive force is "whether

force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)); *see also Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004)) (defendant corrections officers applied force—spraying the prisoner with pepper spray—in a "good faith effort to maintain or restore discipline, not to maliciously cause pain," where the prisoner repeatedly disobeyed the defendants' direct orders to "sit cross-legged on his bunk and face the wall.").

An Eighth Amendment claim has both an objective and subjective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). The subjective component focuses on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). *See also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). In making this inquiry, the Court should consider the need for the use of force, the relationship between that need and the type and amount of the force used, the threat reasonably perceived by the official, the extent of the injury inflicted, and any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 319-21. The inmate is not required to suffer a serious injury, but the extent of his injuries may be considered in determining whether the force used was wanton and unnecessary. *Wilkins*, 559 U.S. at 38-40; *Hudson*, 503 U.S. at 7.

The objective component requires the "pain inflicted to be 'sufficiently serious'" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Hudson*, 503 U.S. at 8). "The Eighth Amendment's "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional

10

recognition *de minimis* uses of physical force, *provided that the use of force is not of a sort repugnant to the conscience of mankind.*" *Smith v. Bigham*, No. 1:17-cv-128, 2018 WL 2100518, at *6 (S.D. Ohio May 7, 2018), *report and recommendation adopted*, 2018 WL 2735648 (S.D. Ohio June 7, 2018) (quoting *Wilkins*, 559 U.S. at 38). But "the *de minimis* inquiry is based on the *nature of the force* rather than the extent of the injury." *Montgomery v. Whitman*, No. 2:19-cv-129, 2020 WL 5250461, at *4 (S.D. Ohio Sept. 3, 2020) (emphasis added) (internal quotation marks omitted) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010)). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Id.* at 580-81 (citing *Wilkins*, 559 U.S. at 37). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.* at 581 (quoting *Hudson*, 503 U.S. at 9). "[T]he key inquiry is whether the force was objectively unreasonable in the circumstances." *Bullocks v. Hale*, 478 F. Supp. 3d 639, 647 (S.D. Ohio 2020), *aff'd*, No. 20-3428, 2021 WL 1578198 (6th Cir. Mar. 1, 2021).

For an Eighth Amendment claim to survive through the summary judgment stage, "the prisoner must satisfy *both* [the] objective and a subjective component[s]." *Brevaldo v. Muskingum Cnty. Sheriff's Off.*, No. 2:18-cv-446, 2020 WL 264352, at *5 (S.D. Ohio Jan. 17, 2020), *report and recommendation adopted*, 2020 WL 6536475 (S.D. Ohio Nov. 6, 2020) (emphasis added) (quoting *Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1093 (6th Cir. 2019)).

11

## 2.  Analysis

Based on the record presented, defendant is entitled to summary judgment on plaintiff's Eighth Amendment excessive force claim as a matter of law.  Defendant has submitted evidence that plaintiff gestured in a threatening manner and spit towards him when he approached plaintiff's cell.  (*See* Lawless Decl., Doc. 38-1, PAGEID 177 at ¶ 5).  He also described plaintiff as presenting an "ongoing threat" and plaintiff's behavior as "assaultive. . . ."  (*Id.*, PAGEID 178 at ¶ 8).  Plaintiff's narrative otherwise is supported only by his signed but unsworn allegations (Doc. 5 at PAGEID 36) ("[B]efore I could get a word out [defendant] . . . spray[ed] me in my facial area with his mace. . . .") and the unsworn statement from his fellow inmate (Doc. 46 at PAGEID 271)[7] ("[Defendant] sprayed [plaintiff]'s face with OC spray for no apparent reason at all.  [Plaintiff] showed no aggression at all."), neither of which is sufficient to create a genuine issue of material fact on summary judgment.  *See Garrett v. Mich. Dep't of Corr.*, No. 3:18-cv-12844, 2020 WL 5223800, at *2 (E.D. Mich. July 13, 2020), *report and recommendation adopted*, 2020 WL 5223283 (E.D. Mich. Sept. 1, 2020) (quoting *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)) (remaining citation omitted) ("[A] party cannot rely on allegations or denials in unsworn filings and . .  a party's 'status as a pro se litigant does not alter [this] duty on a summary judgment motion.'").  *See also* Fed. R. Civ. P. 56(c)(4).

In a factually similar case, *Thompson v. Joseph*, No. 1:12-cv-992, 2014 WL 1685918 (S.D. Ohio Apr. 29, 2014), *report and recommendation adopted*, 2014 WL 2172894 (S.D. Ohio May 23, 2014), the defendant submitted evidence that he used pepper spray against the plaintiff "in direct response to the combination of Plaintiff's verbal threat to spit on Defendant, and

---

[7] While this document purports to be based on personal knowledge, it does not contain other indicia of reliability such as the fellow inmate's signature, date that the statement was made, or statement that it was made under penalty of perjury.

actions taken by Plaintiff in furtherance of that threat." *Id.* at *2. To rebut this evidence, the plaintiff relied only on a fellow inmate's unsworn declaration and his responsive memorandum, made under penalty of perjury, stating his personal belief that he was sprayed with OC spray "for no reason . . . ." *Id.* at *3-4. The court concluded that, even though the plaintiff's responsive memorandum was made under penalty of perjury, neither document raised a genuine issue of material fact sufficient to overcome the defendant's evidence in support of summary judgment. *Id.* at *4. The court summed up its analysis as follows:

> [W]hen pepper spray or some other chemical agent is used against a prisoner, that use of force might support the objective component of an Eighth Amendment claim when combined with other force (i.e., a "violent extraction"), or if the spray was used for an excessive length of time, employed in some obviously malicious manner, or under circumstances that demonstrate a more objectively significant incident. . . . However, on the record presented in this case, where it is clear that some manner of threat by Plaintiff occasioned the briefest reactive use of pepper spray by a single prison guard, with no other force used by that guard or by anyone else, the undersigned concludes that the force used was akin to a "push or shove" that causes "no discernible injury" and that falls short of what is required to state a valid Eighth Amendment claim.

*Id.* at *10. Other courts have found the tailored use of chemical agents objectively reasonable in circumstances involving threatening or aggressive behavior. *See, e.g., Roberson*, 770 F.3d at 406 ("the use of . . . chemical agents against *recalcitrant* prisoners d[oes] not violate the Eighth Amendment") (emphasis added) (internal quotation marks and citation omitted); *Thomas v. Greene*, 201 F.3d 441 (6th Cir. 1999) (soaking a plaintiff's back side with mace was objectively reasonable where the plaintiff "was threatening and uncooperative throughout the [use of force] incident"). *Cf. Jeter v. Ohio Dep't of Rehab. & Corr.*, No. 1:17-cv-756, 2019 WL 5066851, at *6 (S.D. Ohio Oct. 9, 2019), *report and recommendation adopted*, 2020 WL 633300 (S.D. Ohio Feb. 11, 2020) ("Multiple courts including the Sixth Circuit repeatedly have held that a short burst of pepper spray is not disproportionate to the need to control an inmate *who has failed to obey an order.*") (emphasis added) (collecting cases).

Based on the above, the Court finds that plaintiff has not submitted evidence sufficient to create a genuine issue of material fact as to whether the alleged use of force was objectively reasonable.  Plaintiff relies only on his and his fellow inmate's unsworn statements and the video footage.  While the video recordings lend some support to plaintiff's version of events, (*see* Video 029-19A at 6:53:54.827 to 6:53:56.848) (depicting defendant spraying plaintiff with OC spray *before* defendant and the two others step away from plaintiff's cell), they do not provide the angle or audio that would be necessary to rebut defendant's evidence of plaintiff's threatening or assaultive behavior.  *Cf. Payne v. Gifford*, No. 1:16-cv-514, 2017 WL 4329631, at *5 (S.D. Ohio Sept. 5, 2017), *report and recommendation adopted*, 2017 WL 4310543 (S.D. Ohio Sept. 28, 2017) (relying on the defendant's unrebutted affidavits and documentary evidence "[t]o the extent any ambiguity exist[ed]" regarding the video footage to find that the defendant's use of force was objectively reasonable for purposes of summary judgment).  Because plaintiff cannot satisfy the objective component, his Eighth Amendment claim fails.  *See Brevaldo*, 2020 WL 264352 at *5.

### C.  Deliberate Indifference to Medical Needs

The Eighth Amendment requires prison officials to provide humane conditions of confinement and "take reasonable measures to guarantee the safety of the inmates."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Deliberate indifference requires that prison officials know that inmates face a substantial risk of harm and "disregard[] that risk by failing to take reasonable measures to abate it."  *Id.* at 847.  Prison officials must exhibit more than lack of due care for a prisoner's safety before an Eighth Amendment violation will be found.  *Id.* at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  It is not enough that the official "should" have perceived a significant risk, but did not.  *Id.*  As such, there is an objective

14

and subjective component where plaintiff must show "that the 'alleged mistreatment was objectively serious,' and that prison officials 'subjectively ignored the risk to the inmate's safety.'"  *Clark v. Burke*, No. 1:16-cv-547, 2017 WL 397407, at *6 (S.D. Ohio Jan. 10, 2017), *report and recommendation adopted*, 2017 WL 386838 (S.D. Ohio Jan. 27, 2017) (quoting *Rhinehart v. Scutt*, 509 F. App'x. 510, 513 (6th Cir. 2013)).

Defendant is entitled to summary judgment based upon plaintiff's failure to submit evidence showing that defendant was subjectively aware of but disregarded a substantial risk to his safety.  Plaintiff's unsworn allegations that he did not receive medical treatment (*see* Pl.'s Compl., Doc. 5 at PAGEID 46) are flatly contradicted by the record.  The MER indicates that plaintiff was seen the same day as the incident and offered various treatment and medical advice. (Doc. 38-3 at PAGEID 210).  Plaintiff has failed to "present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial."  *See Maston*, 832 F. Supp. 2d at 849 (S.D. Ohio 2011) (citation omitted).  Because plaintiff "cannot rest on the mere allegations of the pleadings," *id.*, defendant is entitled to summary judgment on plaintiff's Eighth Amendment deliberate indifference to medical needs claim.

### D.  Qualified Immunity

Defendant last argues that he is entitled to qualified immunity on plaintiff's Eighth Amendment claims because "no reasonable officer would have understood that it violated the Eighth Amendment to reactively aim chemical spray at Plaintiff in his cell for less than two seconds, in order to force a threatening inmate to retreat or restore order."  (Def.'s Mot. Summ. J., Doc. 41 at PAGEID 249) (quoting *Thompson*, 2014 WL 1685918, at *7).  "Qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known.'" *Johnson v. Dillow*, No. 1:16-cv-503, 2019 WL 110982, at *4 (S.D. Ohio

Jan. 4, 2019), *report and recommendation adopted*, 2019 WL 977885 (S.D. Ohio Feb. 28, 2019)

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (plaintiff was ordered "several times to

comply with the directives and Plaintiff refused.  As such, Plaintiff has failed to establish that he

suffered a deprivation of any clearly established statutory or constitutional right that a reasonable

official would understand violated the same.").

To deny defendant qualified immunity, plaintiff must satisfy two prongs: (1) taken in the

light most favorable to the plaintiff, "do the facts alleged show that the officer's conduct violated

a constitutional right, and (2) if a violation could be made out on a favorable view of the parties'

submission, was the right clearly established at the time of the injury?" *Oliver v. Greene*, No.

1:12-cv-371, 2014 WL 1153247, at *5 (S.D. Ohio Mar. 21, 2014), *aff'd*, 613 F. App'x 455 (6th

Cir. 2015) (citation omitted).  "To deny the officer[] qualified immunity, the Court must deem

[his] use of force under the circumstances objectively unreasonable." *Id.* at *10 (citing *Fettes v.

Hendershot*, 375 F. App'x 528, 533 (6th Cir. 2010)).

As to whether defendant's conduct violated a constitutional right, the Court has

concluded that plaintiff has failed to submit evidence creating a genuine issue of material fact as

to whether defendant's conduct during the use of force incident was objectively reasonable or

whether defendant was deliberately indifferent to his medical needs.  *See supra* pp. 12-15.

Accordingly, plaintiff cannot sustain his Eighth Amendment claims and defendant is entitled to

summary judgment on the basis of qualified immunity.

## VI.    Conclusion

Defendant is immune from suit in his official capacity to the extent that plaintiff seeks

monetary damages.  Plaintiff had no reasonable expectation of privacy in his cell, and defendant

is therefore entitled to judgment as a matter of law on plaintiff's Fourth Amendment cell search

claim.  Plaintiff also failed to show that defendant's use of force was objectively unreasonable or that defendant was deliberately indifferent to plaintiff's medial needs.  Finally, defendant is entitled to qualified immunity on plaintiff's Eighth Amendment claims.  As such, the Court finds that defendant is entitled to summary judgment on all of plaintiff's claims.

**IT IS THEREFORE RECOMMENDED THAT** defendant's motion for summary judgment (Doc. 41) be **GRANTED**.

Date:  6/4/2021

Karen L. Litkovitz
United States Magistrate Judge

17

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

RAVON L. JETER SR.,                                    Case No. 1:19-cv-623
      Plaintiff,                                          Cole, J.
                                                      Litkovitz, M.J.

      vs.

BRYAN LAWLESS,
      Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation within FOURTEEN (14) DAYS after being served with a copy thereof.  This period may be extended further by the Court on timely motion by either side for an extension of time.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).